**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **KEMIT MAWAKANA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No. 1:14-cv-2069** |
| | ) |
| **THE BOARD OF TRUSTEES** | ) |
| **OF THE UNIVERSITY OF** | ) |
| **THE DISTRICT OF COLUMBIA** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

_/s/ Yoora Pak_
Yoora Pak (D.C. Bar No. 467007)
Sara Robinson (D.C. Bar No. 996133)
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
Telephone (703) 245-9300
Facsimile (703) 628-3606
yoora.pak@wilsonelser.com
sara.robinson@wilsonelser.com
_Counsel for Defendant_

539018v.2

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................1

I. FACTUAL BACKGROUND ..................................................................1

   A. Relevant Facts Alleged in the Complaint and Assumed to be True for Purposes of this Motion ...............................................................1

   B. The University's Tenure Review Process at the David A. Clarke School of Law ...........................................................................5

ARGUMENT ....................................................................................................6

I. STANDARD OF REVIEW ...................................................................6

II. PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................8

   A. Plaintiff Has Failed To Plead Any Facts Establishing The Necessary Elements Of An Enforceable Contract. .........................................8

      1. The Standards and Procedures for Retention and Tenure do not contain any agreement by the University with respect to any of the material terms of Plaintiff's employment ...............................................9

      2. Plaintiff has not pled any facts supporting his assertion that the University promised him tenure .............................................12

      3. Plaintiff has not pled any facts supporting his assertion that the University intended to be bound by the Standards and Procedures for Retention and Tenure ..........................................................12

   B. Plaintiff's Claim Fails Because He Failed to Satisfy the Condition Precedent. .....................................................................13

   C. Plaintiff's Claim Fails Because There Was No Breach. ......................14

   D. To The Extent There Was A Contract, Any Alleged Breach Prior To October 2, 2011 Is Untimely ....................................................17

   E. To The Extent There Was A Contract, Plaintiff Waived Any Alleged Breach ...........................................................................17

II. PLAINTIFF'S CLAIM OF BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. .....................................................................18

CONCLUSION ................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aetna Casualty & Surety Co. v. Arlington Hospital*,
    1989 U.S. Dist. LEXIS 11566 (D.D.C. 1989). ....................................................................... 17

*Akassy v. William Penn Apts. Ltd. P'ship*,
    891 A.2d 291 (D.C. 2006) ................................................................................................... 11

*Armenian Assembly of America, Inc. et al. v. Cafeajian*,
    758 F.3d 265 (D.C. Cir. 2014) ............................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 7

*B&H National Place, Inc. v. Beresford*,
    10-855 (RJL), 2012 U.S. Dist. LEXIS 41828
    (D.D.C. Mar. 27, 2012) ...................................................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 7

*Brown v. Board of Trustees of the University of the District of Columbia*,
    No. 13-7027, 2014 U.S. App. LEXIS 23946 (D.C. Cir. Dec. 19, 2014) ......................... 5, 8, 19

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................................... 6

*Cambridge Holdings Group, Inc. v. Federal Ins. Co.*,
    357 F. Supp. 2d 89 (D.D.C. 2004) ......................................................................................... 9

*Corporate Systems Resources v. WMATA*,
    31 F. Supp. 3d 124,
    2014 U.S. Dist. LEXIS 39020 (D.D.C. 2014) ................................................................. 11, 13

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ............................................................................................... 7

*Goldstein v. S & A Restaurant Corp.*,
    622 F. Supp. 139 (D.D.C. 1985) ......................................................................................... 19

*Hais v. Smith*,
    547 A.2d 986 (D.C. 1988) .................................................................................................. 18

*Islamic Am. Relief Agency v. Gonzales*,
    477 F.3d 728 (D.C. Cir. 2007) ............................................................................................... 6

*Jack Baker, Inc. v. Office Space Development Corp.*,
   664 A.2d 1236 (D.C. 1995) ............................................................. 8

*Jia Di Feng v. Lim*,
   786 F. Supp. 2d 96 (D.D.C. 2011) .................................................... 6

*Lance v. UMW 1974 Pension Trust*,
   355 F. Supp. 2d 358 (D.D.C. 2005), *vacated on other grounds by*
   *Lance v. UMW 1974 Pension Trust*,
   400 F. Supp. 2d 29 (D.D.C. 2005) .................................................. 18

*Major v. Plumbers Local Union No. 5*,
   370 F. Supp. 2d 118 (D.D.C. 2005) .................................................. 6

*Manago v. District of Columbia*,
   934 A.2d 925 (D.C. 2007) ................................................................ 8

*Paul v. Howard Univ.*,
   754 A.2d 297 (D.C. 2000) ................................................. 13, 17, 18

*Public Citizen v. Clerk, United States District Court for the District of Columbia*,
   451 F. Supp. 2d 109 (D.D.C. 2006), *aff'd*,
   486 F.3d 1342 (D.C. Cir. 2007) ....................................................... 6

*Stewart v. Nat'l Educ. Ass'n*,
   471 F.3d 169 (D.C. Cir. 2006) ...................................................... 2, 7

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006) ......................................................... 6

*Tsintolas Realty Co. v. Mendez*,
   984 A.2d 181 (D.C. 2009) ................................................................ 8

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) .................................................. 2

## **Statutes**

D.C. Code § 12-301(7) ....................................................................... 16

## **Treatises**

13 WILLISTON ON CONTRACTS § 39:3 (4th ed. 2013) .......................... 13

5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 (1990) ........................ 7

**INTRODUCTION**

Defendant, the Board of Trustees of the University of the District of Columbia ("the University"), by and through counsel, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby submits this Memorandum of Points and Authorities in support of its Partial Motion to Dismiss. As demonstrated below, Plaintiff's two contract claims (Counts Three and Four) fail to state a claim upon which relief can be granted.

I.      **FACTUAL BACKGROUND**

      A.      **Relevant Facts Alleged in the Complaint and Assumed to be True for Purposes of this Motion**

The University hired Plaintiff as an Assistant Professor, a tenure track position, on May 1, 2006. Compl. ¶¶ 7, 40. Plaintiff's initial term was three years, which was renewed in 2009. Compl. ¶ 40.

The University promoted Plaintiff to the rank of Associate Professor in October 2010. Compl. ¶ 7. Plaintiff became eligible for tenure in 2011 and applied for tenure in July 2011. Compl. ¶¶ 7 and 10. Plaintiff alleges that he "met or exceeded *all* of the criteria as set forth in the UDC Faculty Handbook and in the Standards and Procedures For Retention And Tenure adopted by UDC and its faculty." Compl. ¶ 10 (emphasis in original).

The University considers three criteria in evaluating a tenure application: (1) teaching, (2) service and (3) scholarship. Compl. ¶ 9. A subcommittee of the Faculty Evaluation and Retention Committee ("FERC") determined that, while Plaintiff satisfied the teaching and service criteria, he did not satisfy the scholarship criterion. Compl. ¶¶ 12, 15, 16, 45. FERC is comprised of "all tenured members of the faculty other than the Dean …." Exhibit 1 (Faculty

1

Handbook) at 26.[1]  Thus, on February 28, 2013, the FERC subcommittee recommended that Plaintiff's tenure application be denied.  Compl. ¶ 45.

Plaintiff alleges that his "contract" with the University "specifically referenced and adopted the Standards and Procedures for Retention and Tenure."  Compl. ¶ 41 (quotations omitted).  The Standards and Procedures for Retention and Tenure were prepared by FERC and applies to FERC procedures for considering faculty applications for retention, promotion and tenure.  *See* Exhibit 2.

Section II of the Standards and Procedures for Retention and Tenure provides that the condition precedent for an annual review is the submission of materials by the non-tenured faculty member:

> The professional development of each member of the full-time faculty who is not tenured will be assessed every year.  By October 15 of each year, each non-tenured faculty member shall provide the Committee with a statement describing for the prior year their teaching, scholarship, community and DCSL service activities and their plans for the current year.  Additional procedures for the evaluation of applicants for promotion and/or tenure are set out in Section III of this document.  The provisions of Section III supersede the provisions of this Section only if they explicitly and expressly require other procedures.
>
> If the faculty member is not a candidate for retention or an application for retention, promotion and/or tenure, the purpose of the annual review will be to provide the non-tenured faculty member with feedback on her or his progress toward meeting the standards for promotion and tenure stated in this document, and to provide supportive guidance and direction toward the successful completion of the promotion and tenure process.  Except for the years in which the faculty member is a candidate for retention or an applicant for promotion and/or tenure, the annual review will not ordinarily result in any recommendation regarding the faculty member's reappointment or future status, although at the request of the Dean, the Chair of the Faculty Evaluation and Retention Committee, or the faculty member, such a recommendation will be made.  At the

---

[1] Plaintiff refers to the Faculty Handbook in his Complaint, *see* ¶ 10, and thus the court may consider it even though it not attached to the Complaint.  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citations omitted).

2

option of an untenured faculty person, the Dean may arrange for a mentor for such person.

The Chair of the Faculty Evaluation and Retention Committee will appoint a subcommittee of at least two tenured faculty members for each non-tenured faculty member.  Ordinarily, at least one member of a subcommittee will be changed each year.  Each member of a subcommittee will: (1) attend at least two classes and/or two clinic sessions taught by the faculty member; (2) review the faculty member's scholarly works while in progress and when published; (3) review the faculty member's community service and DCSL service, and (4) otherwise monitor the faculty member's professional development.  The subcommittee will review student evaluations and exams or other valuable devices and may discuss the faculty member's work with others in the faculty member's field.

The subcommittee shall meet with the faculty member at least once each academic year to discuss the faculty member's professional development and to counsel the faculty member.  The subcommittee will discuss the degree to which her or his performance meets the standards for promotion and tenure stated in this document.  However, no statements made by any member of the subcommittee will control the retention and Tenure Committee's decision as to promotion and/or tenure.  ….

Exhibit 2 (Standards and Procedures For Retention And Tenure) at 6-8.

Section III of the Standards and Procedures for Retention and Tenure sets out the procedures for retention, promotion and tenure by FERC.  *See* Exhibit 2 at 9-12.  Once the faculty member submits an application for retention, promotion and/or tenure, FERC will appoint a subcommittee to perform "a more in-depth evaluation and to prepare a draft report for the Faculty Evaluation and Retention Committee."  *Id.* at 10.  In evaluating the application, the subcommittee must rely upon "their personal judgments on the applicant's scholarly works" and "may rely on written evaluations by outside experts in formulating a judgment on the applicant's scholarly achievements and potential."  *Id.*  The subcommittee must also "review the activities of the applicant to form a judgment on her or his teaching and service to the law school, the profession, and the community."  *Id.* at 11.  In assessing the application and formulating its judgment as to the applicant's qualifications, FERC expressly states that:

3

The decision of a candidate for renewal and an applicant's application for promotion and/or tenure will be evaluated solely on the standards in this document, regardless of: (1) any prior discussions with, statements made by, or promises made by any member of the faculty or any other persons or (2) ***any failure by the subcommittee, the Faculty Evaluation and Retention Committee, the Chair of the Faculty Evaluation and Retention Committee, or any other persons to follow the procedural rules contained in this document.***

*Id.* (emphasis supplied).

In his Complaint, and in accordance with Section II, Plaintiff acknowledges and avers that he received feedback on at least three occasions. *See* Compl. ¶ 46. Plaintiff also concedes and avers that in 2009 and 2010, he received written evaluations that provided guidance with respect to the scholarship criterion. *See* Compl. ¶ 47. Specifically, due to Plaintiff's lack of publications during the first three years of his appointment, Plaintiff was reminded that "[h]e will need to complete all three articles within the next two years in keeping with his 'tenure clock.'" Compl. ¶ 47. Plaintiff then published three articles in 2011 – right before or as he submitted his tenure application in July 2011:

1) Power and Law, Bait and Switch: Debunking "Law" as a Tool of Societal Change, 36 OKLA. CITY U. L. REV. 93 (published Spring 2011)

2) In the Wake of Coast Federal: The Plain Meaning Rule and the Anglo-American Rhetorical Ethic, 11 UNIV. OF MD. LAW JOURNAL OF RACE, RELIGION, GENDER AND CLASS 39 (published 2011)

3) Historically Black College and University Law Schools: Generating Multitudes of Effective Social Engineers, 14 J. GENDER, RACE & JUST. [A Journal of the University of Iowa College of Law] 679 (published in July 2011).

*See* Compl. ¶¶ 20-22, 48.

Plaintiff also acknowledges and avers that the FERC Subcommittee Chair, Professor John Brittain (an African American male), and Dean Katherine Broderick (a Caucasian female) met with him in October 2012 to provide feedback and guidance regarding his tenure application. Specifically, Plaintiff avers that Professor Brittain and Dean Broderick "tried to convince

[Plaintiff] to withdraw his application for tenure" because "the tenured faculty would vote 'no' on his application, she would vote 'no' on his application, and that a tenure track denial would 'ruin your career.'" Compl. ¶ 50.

Plaintiff ignored this recommendation and did not withdraw his application.  Compl. ¶ 51.  The subcommittee subsequently issued a recommendation against the grant of tenure. Compl. ¶ 51.

**B.     The University's Tenure Review Process at the David A. Clarke School of Law**

In its Opinion dated December 19, 2014, the D.C. Circuit recognized the following process for the consideration of tenure applications at the University's David A. Clarke School of Law (which quotes an excerpt from the Merger Agreement):

> The Faculty Evaluation and Retention Committee shall evaluate faculty candidates for award of tenure and make recommendations to the Dean.  Based on the recommendation of the Faculty Evaluation and Retention Committee, the Dean will recommend faculty candidates for promotion and tenure to the Provost, who shall forward those recommendations to the President with his or her own recommendations.  The provisions of Chapter 14 of the DCSL Rules shall be amended to provide for the Dean to forward recommendations for promotion and tenure to the President of the University, through the Provost, for final approval.

*Brown v. Board of Trustees of the University of the District of Columbia*, No. 13-7027, 2014 U.S. App. LEXIS 23946, at *15-16 (D.C. Cir. Dec. 19, 2014).  The D.C. Circuit noted that "[t]his language makes clear that the Board is not required to review Brown's tenure application. The Committee is to forward its recommendation to the Provost, who then forwards the Committee's recommendation, as well as her own, to the President." *Id.* at *16.

Here, in this case, Plaintiff's application for tenure never made it out of the FERC subcommittee.  *See* Compl. ¶ 51.  Thus, Plaintiff's own colleagues recommended that his application for tenure be denied.

5

## ARGUMENT

### I.     STANDARD OF REVIEW

A court may grant a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) if it the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The facts alleged in the complaint must be treated as true and the plaintiff must be given the benefit of all reasonable inferences that can be derived from the facts. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). However, "[s]ome factual allegations may render success on the merits impossible, and these also are accepted as true." *Public Citizen v. Clerk, United States District Court for the District of Columbia*, 451 F. Supp. 2d 109, 114 (D.D.C. 2006), *aff'd*, 486 F.3d 1342 (D.C. Cir. 2007). In reviewing the factual assertions, the Court "need not … accept inferences that are unsupported by the facts set forth in the complaint … [or] legal conclusions cast in the form of factual allegations." *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007) (citations omitted); *Jia Di Feng v. Lim*, 786 F. Supp. 2d 96, 101 (D.D.C. 2011) (citations and quotations omitted).

It is well established that while the Complaint is not required to plead law or match facts to every element of a legal theory, Plaintiff must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the Complaint that indicates that the *prima facie* elements of a cause of action exist. *See Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118 (D.D.C. 2005) (holding that while plaintiff does not have to establish a *prima facie* case to survive a motion to dismiss, plaintiff "must present facts that would establish the elements of each claim").

Plaintiff's mere "labels and conclusions, and a formulaic recitation of the elements" of his claims, "will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In that regard, Plaintiff's unsubstantiated and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," as well as her "[n]aked assertion[s]," are legally insufficient under the pleading requirements of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555, 557 (citation omitted). The Supreme Court reinforced the pleading requirement under Rule 8 in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that while Rule 8 is a departure from the technical code pleading, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79 (internal citations and quotations omitted).  Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id* at 679.  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In its review, the Court may only consider the facts alleged in the Complaint, documents attached to or incorporated into the Complaint, and matters of which the court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-625 (D.C. Cir. 1997). The Court does not consider matters outside of the complaint if it reviews a document that is attached to the complaint or a document that is referred to in the complaint but not attached to the complaint. *Stewart*, 471 F.3d at 173.  In fact, where the plaintiff "fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading."  5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327 at 762-63 (1990).

## II.   PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (quoted in *Brown*, 2014 U.S. App. LEXIS 23946, at *15).  It is well settled that Plaintiff, as the party asserting the existence of a contract, has the burden of proof on this issue.  *See Jack Baker, Inc. v. Office Space Development Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (citations omitted).

As demonstrated below, Plaintiff's allegations are fatally deficient because he has failed to allege any facts establishing that a valid contract exists between the University and Plaintiff. *See, e.g.*, *Manago v. District of Columbia*, 934 A.2d 925, 926 (D.C. 2007) (holding that a complaint "must set forth sufficient information to outline the legal elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist").

Assuming *arguendo* that there is a contract, Plaintiff has not pled a breach of the alleged contract by the University.  In addition, to the extent Plaintiff has sufficiently pled a breach of the so-called contract that occurred more than three years from the date of the filing of his Complaint, the statute of limitations has run on such claims of breach and therefore must be dismissed as untimely.  Finally, Plaintiff has waived any breach of the alleged contract.

### A.   Plaintiff Has Failed To Plead Any Facts Establishing The Necessary Elements Of An Enforceable Contract.

In his Complaint, Plaintiff appears to plead that the Standards and Procedures for Retention and Tenure is the "contract" at issue.  *See* Compl. ¶¶ 40-53.  Plaintiff also refers to the

Faculty Handbook and pleads that he met all criteria for tenure as set forth in the Faculty Handbook.  *See* Compl. ¶ 10.

Plaintiff does not allege any facts upon which this Court can conclude that a contractual relationship exists between the University and Plaintiff based upon the Standards and Procedures for Retention and Tenure.  *See* Compl. *passim*.  Nowhere in the Complaint does Plaintiff assert any facts establishing (1) an agreement as to all material terms of the purported "personal contract" between Plaintiff and the University, or (2) an intention of the parties to be bound – the two necessary elements of an enforceable contract under District of Columbia law.  *See Cambridge Holdings Group, Inc. v. Federal Ins. Co.*, 357 F. Supp. 2d 89, 94 (D.D.C. 2004) (citations and quotations omitted).

1.   <u>The Standards and Procedures for Retention and Tenure do not contain any agreement by the University with respect to any of the material terms of Plaintiff's employment</u>

The material term at issue in this case whether the Plaintiff received the process to which he claims he was entitled prior to the denial of his application for tenure, specifically with regard to guidance and feedback regarding his scholarship.  To that end, Plaintiff claims that, pursuant to the Standards and Procedures for Retention and Tenure, ***the University*** had an obligation to provide him with a minimum amount of "feedback and guidance that would address any putative concerns regarding his scholarship." Compl. ¶ 48.  The Standards and Procedures for Retention and Tenure, however, make no mention of ***the University's*** obligations with respect to the tenure application process.  Rather, on its face, the Standards and Procedures for Retention and Tenure were prepared by FERC to govern FERC's procedures.

In making its recommendations for retention, promotion and tenure, FERC (which is comprised of all tenured faculty other than the Dean, *see* Exhibit 1 at 26) prepared the Standards

9

   Case 1:14-cv-02069-ABJ   Document 8-1   Filed 02/10/15   Page 14 of 25

and Procedures for Retention and Tenure to guide the faculty's evaluation.  The purpose of the

Standards and Procedures for Retention and Tenure is set forth in the preface:

> As members of a law school faculty, we are committed to our continuing professional growth and development.  To assist us in that process, evaluations for retention, promotion, and tenure are necessary.  They help us continue to profess as professionals, and they advance the law school in its pursuit of excellence.
>
> A law professor should continue to develop teaching and practice skills, scholarship and service activities over an entire career.  To determine whether a faculty member is meeting, and is likely to continue to meet, these primary expectations of professional development, evaluations for reappointment, promotion, and tenure will be conducted according to the following standards and procedures[.]

Exhibit 2 at 2.  The Standards and Procedures for Retention and Tenure then explain and

describe the Standards for Evaluation (Section I), Procedures for Annual Review of

Non-Tenured Members of the Faculty and Recommendations Regarding Reappointment (Section

II), Procedures for Retention, Promotion and Tenure (Section III), Confidentiality (Section IV)

and Effective Date (Section V).  *See* Exhibit 2.  With respect to Sections II and III, the Standards

and Procedures for Retention and Tenure only describe the role and responsibilities of FERC and

its subcommittees:

- "The Chair of the Faculty Evaluation and Retention Committee will appoint a subcommittee of at least two tenured faculty members for each non-tenured faculty member."
- "The subcommittee shall meet with the faculty member at least once each academic year to discuss the faculty member's professional development and to counsel the faculty member."
- "The subcommittee will discuss the degree to which her or his performance meets the standards for promotion and tenure stated in this document."
- "Each subcommittee will make a prompt and concise report to the Faculty Evaluation and Retention Committee."
- "The [subc]ommittee of the Faculty Evaluation and Retention Committee will annually evaluate each non-tenured faculty member, communicate to each non-tenured faculty member the report of the subcommittee, and provide a written assessment to the Retention and Tenure Committee."
- "The subcommittee will, at the request of the faculty member, the Chair of the Faculty Evaluation and Retention Committee, or the Dean, made a

recommendation to the Faculty Evaluation and Retention Committee regarding the faculty member's reappointment."
- "During evaluation for promotion and/or tenure, members of the Faculty Evaluation and Retention Committee will visit the classes of the applicant to assess teaching effectiveness, and acquaint themselves with the applicant's scholarly works and community and DCSL service."
- "A subcommittee of the Faculty Evaluation and Retention Committee will be appointed for each applicant."
- "That subcommittee will have the responsibility for a more in-depth evaluation and to prepare a draft report for the Faculty Evaluation and Retention Committee."
- "The subcommittee will submit a draft report to the Faculty Evaluation and Retention Committee embodying a written recommendation on the applicant for consideration by the full Faculty Evaluation and Retention Committee."
- "The Faculty Evaluation and Retention Committee will submit a written report and recommendation to the Dean …."

Exhibit 2 at 6-12.  In short, upon the submission of a tenure application, FERC establishes a subcommittee to perform an in-depth evaluation of the application, which ultimately results in a draft report that is presented to FERC.  The subcommittee's evaluations are based upon the subcommittee members' personal judgments, as well as evaluative materials received from other sources.  There is nothing in this document that obligates the University to provide any feedback or guidance leading up to the submission of a tenure application.

Try as he may, Plaintiff cannot make the University a party to this so-called "contract" when the document itself is devoid of any mention of the University as an institution.  *See Corporate Systems Resources v. WMATA*, 31 F. Supp. 3d 124, 2014 U.S. Dist. LEXIS 39020, at *8-12 (D.D.C. 2014) (holding that plaintiff failed to plead the existence of a valid contract with WMATA when the document fails to name WMATA as a party).  To that end, it is well settled that the Court must give the language used in a purported contract its plain meaning.  *See B&H National Place, Inc. v. Beresford*, 10-855 (RJL), 2012 U.S. Dist. LEXIS 41828, at *11 (D.D.C. Mar. 27, 2012) (citing *Akassy v. William Penn Apts. Ltd. P'ship*, 891 A.2d 291, 299 (D.C. 2006)).  Because the Standards and Procedures for Retention and Tenure are silent as to any

11

obligation or responsibility of the University, it cannot form the basis of any contractual obligation between the University and Plaintiff.

        2.     <u>Plaintiff has not pled any facts supporting his assertion that the University promised him tenure</u>

To the extent Plaintiff is asserting that he was somehow promised tenure by the Standards and Procedures for Retention and Tenure or the Faculty Handbook (*see* Compl. ¶ 60), neither the Standards and Procedures for Retention and Tenure nor Faculty Handbook makes such a promise.  *See* Exhibits 1 and 2.  Indeed, courts in the District of Columbia have recognized that the Faculty Handbook does not contain any promise or guarantee of tenure under any circumstance.  *See Paul*, 754 A.2d at 306 n.16 (holding that the faculty handbook did not guarantee or promise tenure).

        3.     <u>Plaintiff has not pled any facts supporting his assertion that the University intended to be bound by the Standards and Procedures for Retention and Tenure</u>

Plaintiff's attempt to plead a valid contract also fails because there are no facts asserting any intent ***by the University*** to be bound by the policies and procedures described in FERC's Standards and Procedures for Retention and Tenure.

In fact, FERC makes clear that it does not intend to be contractually bound by the Standards and Procedures for Retention and Tenure.  To that end, FERC expressly states that "[t]he decision of a candidate for renewal and an applicant's application for promotion and/or tenure will be evaluated solely on the standards in this document, ***regardless of***: (1) any prior discussions with, statements made by, or promises made by any member of the faculty or any other persons or (2) ***any failure by the subcommittee, the Faculty Evaluation and Retention Committee, the Chair of the Faculty Evaluation and Retention Committee, or any other persons to follow the procedural rules contained in this document.***"  Exhibit 2 at 11 (emphasis

12

supplied).   Such preclusive statements are "plainly insufficient to establish the elements of a

binding contract, either express or implied."   *See Paul v. Howard Univ.*, 754 A.2d 297, 311

(D.C. 2000).

      **B.**        **Plaintiff's Claim Fails Because He Failed to Satisfy the Condition Precedent.**

Even if Plaintiff had sufficiently pled the necessary elements of an enforceable contract

(which he has not), his breach of contract claim fails because he failed to plead any facts

establishing that he satisfied the conditions precedent to any "guidance and feedback" with

respect to the scholarship criterion.

The District of Columbia recognizes the prevention doctrine, "which stands for the

proposition that if one contracting party's actions are the cause for another party's failure to

satisfy a condition in the contract, he cannot take advantage of the failure."   *Armenian Assembly*

*of America, Inc. et al. v. Cafeajian*, 758 F.3d 265, 276-277 (D.C. Cir. 2014) (citations and

quotations omitted).[2]  To that end:

> Under D.C. law, a condition precedent may be defined as an event, not certain to
> occur, which must occur, unless its non-occurrence is excused, before
> performance under a contract becomes due. … No particular form of words is
> necessary in order to create an express condition; however, words and phrases
> such as "if" and "provided that," qualifying a promise, are commonly used to
> indicate that the duty of the promisor has expressly been made conditional.

*Corporate Systems Resources*, 2014 U.S. Dist. LEXIS 39020, at *29 (citations and quotations

omitted).

In this case, Plaintiff claims that he was contractually promised "feedback and guidance

that would address any putative concerns regarding his scholarship."  Compl. ¶ 48.  Plaintiff then

claims that he was not provided that "feedback and guidance" at any time prior to the rejection of

---

[2] The D.C. Circuit also cited to 13 WILLISTON ON CONTRACTS § 39:3, at 569 (4th ed. 2013), which states: "It is
a general principle of contract law that if one party to a contract hinders, prevents, or makes impossible performance
by the other party, the latter's failure to perform will be excused."  *Armenian Assembly of America*, 758 F.3d at 277.

his tenure application.  Compl. ¶ 48.  The fallacy with respect to Plaintiff's allegations is that he has not pled any facts establishing that he met the conditions precedent that would trigger such "feedback and guidance."

Notably, the condition precedent for FERC review is Plaintiff's submission of materials for FERC's review.  *See* Exhibit 2 at 6 ("By October 15, of each year, each non-tenured faculty member shall provide the Committee with a statement describing for the prior year their teaching, scholarship, community and DCSL service activities and their plans for the current year.").  Except for an early draft of his first article (Compl. ¶ 46), the Complaint is otherwise silent as to whether Plaintiff submitted any completed publications for critical review by FERC prior to his July 2011 tenure application.   It is clear, based upon Plaintiff's own pleadings, that he cannot make this allegation because he did not so.  To that end, there can be no dispute that Plaintiff did not publish any articles until 2011.  *See infra* Section I.A.  Because Plaintiff did not have any publications prior to 2011 (including an article that was not published until July 2011), FERC could not have provided any "feedback and guidance" prior to his July 2011 tenure application.  In other words, FERC could not have provided "feedback and guidance" on scholarship if FERC did not have scholarship materials to review.  Thus, Plaintiff's own lack of publications prior to July 2011 deprived him of the "feedback and guidance" that he now disingenuously claims he should have received prior to July 2011.

In summary, because Plaintiff did not submit any publications for review prior to July 2011, FERC's alleged failure to provide "feedback and guidance" prior to July 2011 must be excused.  Accordingly, his breach of contract claim fails as a matter of law.

## C.   Plaintiff's Claim Fails Because There Was No Breach.

Even if Plaintiff had sufficiently pled the necessary elements of an enforceable contract (which he has not), his claim fails because he actually pled that he received the feedback and

14

guidance  to which he believes he was entitled.  For example, Plaintiff acknowledges and avers that he received feedback on at least three occasions in 2007, 2009 and 2010.  *See* Compl. ¶ 46. Plaintiff further concedes and avers that in 2009 and 2010, he received written evaluations that provided guidance with respect to the scholarship criterion.  *See* Compl. ¶ 47.

With respect to the scholarship criterion, Plaintiff disingenuously asserts that he did not receive any "feedback or guidance" at any time period to rejecting his tenure application. Compl. ¶ 48.  Based upon his own averments, it is clear that Plaintiff did not publish during the first three years of his appointment.  In fact, FERC had to remind Plaintiff that "[h]e will need to complete all three articles within the next two years in keeping with his 'tenure clock.'"  Compl. ¶ 47.  Plaintiff then published three articles in 2011 – right before or as he submitted his tenure application in July 2011.  *See supra* Section I.A ; Compl. ¶¶ 20-22, 48.  By waiting until the last moment to publish his articles, Plaintiff never gave FERC the opportunity to review and provide "feedback and guidance"  with respect to all of his articles.   Indeed, Plaintiff avers that he received positive feedback on an "early portion of the first article," Compl. ¶ 46, which was published sometime in the Spring of 2011.  Plaintiff makes no allegations that he submitted and asked for "feedback and guidance" as to the other two articles that were published in 2011 – one in the same month as his tenure application (July 2011).

Unfortunately for Plaintiff, due to the lateness of his publications, the only "feedback and guidance" appeared to come as his tenure application was being reviewed by the FERC subcommittee.   Based upon Plaintiff's own averments, the FERC subcommittee reviewed Plaintiff's articles and raised concerns about and criticized Plaintiff's scholarship.  Compl. ¶ 51. The "feedback and guidance" provided by the subcommittee was that Plaintiff should withdraw his tenure application.  *See* Compl. ¶ 50.

Thus, Plaintiff's own allegations establish that there was no "breach" of the alleged "contract" based upon the Standards and Procedures for Retention and Tenure.  Plaintiff was reminded about his lack of diligence, and he hurriedly published three articles in the same year as his tenure application.  Once the subcommittee had published material to review and critique, it provided the "feedback and guidance" Plaintiff to which claims he was entitled.  That the "feedback and guidance" was negative does not mean that it did not occur.

Therefore, because Plaintiff received "feedback and guidance" from the subcommittee, there can be no breach of the alleged "contract" based upon the Standards and Procedures for Retention and Tenure.  Accordingly, Plaintiff's breach of contract claim fails.

16

**D.**     **To The Extent There Was A Contract, Any Alleged Breach Prior To October 2, 2011 Is Untimely**

In the District of Columbia, the statute of limitations for a breach of contract claim is three years.  D.C. Code § 12-301(7).

Here, Plaintiff filed his lawsuit on October 2, 2014.  Thus, to the extent that the Court finds that there is an enforceable contract based upon the Standards and Procedures for Retention and Tenure, any claim for alleged breach that occurred prior to October 2, 2011 is out of time.  Accordingly, Plaintiff's claims of breach of contract based upon the Standards and Procedures for Retention and Tenure based upon any acts or omissions prior to October 2, 2011, must be dismissed with prejudice.

**E.**     **To The Extent There Was A Contract, Plaintiff Waived Any Alleged Breach**

Finally, if the Court were to find that there is a contract based upon the Standards and Procedures for Retention and Tenure, Plaintiff waived any breach of that alleged contract when he "entered into" the contract.

In the District of Columbia, waiver is a proper defense to a breach of contract claim.  As recognized by the courts, a waiver is a "voluntary relinquishment of a known right."  *Aetna Casualty & Surety Co. v. Arlington Hospital*, 1989 U.S. Dist. LEXIS 11566, at *11 (D.D.C. 1989).  Waiver has two elements: "(1) voluntary action or inaction with intent to surrender a right under the contract and (2) knowledge of the facts and circumstances that gave rise to the right."  *Id.*

In this case, Plaintiff asserts that the Standards and Procedures for Retention and Tenure constitute the basis of his "contract."  However, by entering into that "contract," Plaintiff expressly agreed that his tenure application could be evaluated "regardless of …any failure by the subcommittee, the Faculty Evaluation and Retention Committee, the Chair of the Faculty

Evaluation and Retention Committee, or any other persons to follow the procedural rules contained in this document." Exhibit 2 at 11 (emphasis supplied). By agreeing to this provision, Plaintiff acknowledged that the failure to comply with any of the procedures, such as annual reviews, would not hinder the review of his application. Thus, he in essence waived any "breach" of this so-called "contract."

* * * * *

In summary, Plaintiff has not pled, and he cannot plead, that the Standards and Procedures for Retention and Tenure is a valid contract between him and the University. "In the absence of a valid agreement, a breach of contract claim cannot be sustained." *Paul v. Howard Univ.*, 754 A.2d 297, 311 (D.C. 2000) (citation omitted).

In addition, to the extent there is a "contract," Plaintiff's claim fails because he did not satisfy the condition precedent for the "feedback and guidance" he claims he was entitled to. Further, even if there was a valid contract, he has not pled a breach. Moreover, any claim of breach based upon the failure to act prior to October 2, 2011, is out of time. Finally, Plaintiff waived any breach by entering into the so-called "contract" because he acknowledged that the failure to follow the procedures in the Standards and Procedures for Retention and Tenure would not preclude the evaluation of his tenure application.

Therefore, Plaintiff's claim for breach of contract (Count III) should be dismissed with prejudice.

## II.  PLAINTIFF'S CLAIM OF BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In Count Four of his Complaint, Plaintiff asserts that the University breached the covenant of good faith and fair dealing "[b]y denying him tenure and terminating his employment without providing him notice of putative concerns regarding his scholarship."

18

Compl. ¶ 62.   For the reasons stated below, this cause of action should be dismissed with prejudice for failure to state a claim.

The District of Columbia only recognizes an implied covenant of good faith and fair dealing in the performance and enforcement of valid contracts. *See Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988) (citations omitted); *see also Lance v. UMW 1974 Pension Trust*, 355 F. Supp. 2d 358, 362 (D.D.C. 2005) (finding that a contract must exist to assert a covenant of good faith and fair dealing claim), *vacated on other grounds by Lance v. UMW 1974 Pension Trust*, 400 F. Supp. 2d 29 (D.D.C. 2005).   This covenant means that neither party "shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Paul*, 754 A.2d at 310 (quoting *Hais*, 547 A.2d at 987) (internal citation omitted).

Plaintiff's claim fails as a matter of law because it is dependent upon the existence of a valid contract.   As demonstrated above, Plaintiff has not pled adequate facts to establish a valid contract between him and the University with respect to pre-application reviews or tenure. *See supra* Section II.A.   Because Plaintiff's breach of contract claim fails for the reasons stated above, his claim that the University breached an implied covenant related to that contract must also fail. *See Goldstein v. S & A Restaurant Corp.*, 622 F. Supp. 139, 142-143 (D.D.C. 1985) (interpreting separate breach of contract and breach of good faith and good dealing claims as one claim based on principles of contract law); *Brown*, 2014 U.S. App. LEXIS 23946, at *18 (affirming dismissal of plaintiff's good faith and fair dealing claim because "Brown had no contractual right to receive tenure").

## **CONCLUSION**

For all the foregoing reasons, as well as those that may be urged upon this Court at oral argument, Defendant respectfully requests that this Court dismiss Counts Three and Four of Plaintiff's Complaint with prejudice.

Dated: February 10, 2015                    Respectfully submitted,


                                            _/s/ Yoora Pak_____
                                            Yoora Pak, D.C. Bar No. 467007
                                            Sara Robinson, D.C. Bar No. 996133
                                            WILSON, ELSER, MOSKOWITZ,
                                                EDELMAN & DICKER, LLP
                                            8444 Westpark Drive, Suite 510
                                            McLean, Virginia  22102
                                            Telephone: (703) 245-9300
                                            Facsimile: (703) 245-9301
                                            Yoora.Pak@WilsonElser.com
                                            Sara.Robinson@WilsonElser.com
                                            *Counsel for Defendant*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February 2015, I served a true and accurate copy of the forgoing via CM/ECF for the U.S. District Court of the District of Columbia on all counsel of record:

>   Richard A. Salzman, Esquire
>   HELLER, HURON, CHERTHOF & SALZMAN
>   1730 M Street, Northwest, Suite 412
>   Washington, D.C.  20036

>   */s/ Yoora Pak*
>   Yoora Pak, D.C. Bar No. 467007
>   Sara Robinson, D.C. Bar No. 996133
>   WILSON, ELSER, MOSKOWITZ,
>         EDELMAN & DICKER, LLP
>   8444 Westpark Drive, Suite 510
>   McLean, Virginia  22102
>   Telephone: (703) 245-9300
>   Facsimile: (703) 245-9301
>   Yoora.Pak@WilsonElser.com
>   Sara.Robinson@WilsonElser.com
>   *Counsel for Defendant*

21

539018v.2